# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

KENNETH L. STOREY         )
)
)
      Plaintiff,          )
)
VS.                        )        No. 14-1098-JDT-egb
)
DERRICK SCHOFIELD, ET AL.,  )
)
)
      Defendants.      )

_____

## ORDER TO MODIFY THE DOCKET, DISMISSING COMPLAINT, CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, NOTIFYING PLAINTIFF OF APPELLATE FILING FEE AND NOTIFYING PLAINTIFF OF RESTRICTIONS UNDER 28 U.S.C. § 1915(g)

_____

On April 24, 2014, Plaintiff Kenneth L. Storey ("Storey"), who was, at the time, an inmate at the Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee,[1] filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, along with a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) In an order issued on April 28, 2014, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5.) The Clerk shall record the Defendants as Tennessee Department of Correction ("TDOC") Commissioner Derrick Schofield; TDOC Deputy Commissioner of Operations Jason Woodall; Bruce Westbrook, former Warden of the Bledsoe County Correctional Complex in Pikeville, Tennessee; TDOC "Comm. Designee"

---

[1] Plaintiff is presently incarcerated at the West Tennessee State Penitentiary in Henning, Tennessee. (ECF No. 9.)

at HCCF Tausha Mitchell; TDOC Supervisor at HCCF Brad Smith; TDOC Liaison/Contract Monitor at HCCF Bryant Williams; TDOC Correctional Officer at HCCF Mary Loshbough; former Hardeman County Mayor Willie Spencer; Hardeman County, Tennessee;[2] Corrections Corporation of America ("CCA") President and CEO Damon Henniger; CCA Vice President Jimmy Turner; CCA Executive Vice President and General Counsel G.A. Puryear; former HCCF Warden Michael Donahue; HCCF Associate Warden of Operations Terrance Dickerson; HCCF Associate Warden of Programs M.L. Bradshaw; Former HCCF Director of Internal Affairs Kellsey Gates; HCCF Chief of Security Sarah Cassiday; HCCF Assistant Chief of Security Brian Smalls; HCCF Chief of Unit Management Deanne Mills; HCCF Unit Manager Dorothy Robertson; HCCF Unit Manager Shelia Martin; HCCF Shift Commander James Estes; HCCF Shift Supervisor Kevin Woods; HCCF Shift Supervisor Ellery Grier; HCCF Mailroom Supervisor Kent Joy; HCCF Floor Supervisor Larry P. Coleman; HCCF Floor Supervisor Keisha King; HCCF Disciplinary Hearing Officer Yameekia Futrell-Sharpe ("Futrell"); HCCF Grievance Hearing Officer K. Howell; HCCF Supervisor Geneva Robertson; HCCF Count Room Clerk and Disciplinary Preparation Officer Elizabeth Ricketts; former HCCF Correctional Officer Brandie Loveday; HCCF Correctional Officer Tiquita Vaughn; HCCF Floor Supervisor M. Golden; HCCF Correctional Officer A. McQueen; and HCCF Correctional Officer First Name Unknown ("FNU") Brown.[3]

---

[2] Plaintiff purports to sue "All County Commissioners (Names Unknown)." (ECF No. 1 at 3.) However, the Court construes the allegations against the unidentified Commissioners as claims against Hardeman County.

[3] The Clerk is DIRECTED to modify the docket to correct the spelling of the names of the following Defendants: Mary Loshbaugh should be Mary Loshbough, Dorthy Robinson should be Dorothy Robertson, Yameeka Futrell-Sharpe should be Yameekia Futrell-Sharpe, and T. Vaugn should be Tiquita Vaughn.

## I. The Complaint

Storey's complaint consists of twenty-four claims supported by allegations with varying degrees of factual detail.

In his first claim, Storey alleges that his grievance procedure was intentionally delayed to hide the misconduct of Defendant Loshbough who filed a false disciplinary report against him while he was incarcerated at the Bledsoe County Correctional Complex ("BCCX") in Pikeville, Tennessee.[4] (ECF No. 1 at 4.) Storey filed a grievance against Defendant Loshbough because she refused to make copies of his legal documents and for the false disciplinary report. (*Id.*) Storey was transferred to the HCCF, where he received notice that his grievance was denied. (*Id.*) Defendants Westbrook and Woodall agreed with the decision of the grievance board. (*Id.*) Storey contacted Defendants Williams and Futrell to get information regarding his appeal of the disciplinary charge. (*Id.*) Due to Defendant Williams's failure to contact Pikeville, Storey filed a grievance against him which was denied by Defendant Williams's supervisor, Defendant Smith, with agreement from Defendants Donahue and Woodall. (*Id.*) Storey states that it took six months for his grievance to get through the grievance process, and he was denied relief from the false disciplinary charge. (*Id.*) Both the delay and the denial were to hide the misconduct of Defendant Loshbough and hinder Storey's efforts at getting relief. (*Id.*)

In the second claim, Storey alleges that he was intentionally placed in cells with violent inmates. (*Id.* at 7.) Storey states that despite his age of sixty, he was given a cell assignment with an eighteen-year-old gang member. (*Id.* at 5.) Storey requested to be transferred to another pod both in person and in writing to Defendant Donahue. (*Id.*) Defendant Donahue told Storey that he asked Defendant Mills to review the situation. (*Id.*) Storey asked Defendants Mills and D.

---

[4] Plaintiff states he was housed at the STSRCF (*id.* at 4), which was the Southeastern Tennessee State Regional Correctional Facility, the former name of the BCCX.

Robertson about making a change, but they did not move him.  (*Id.*)  Storey was eventually moved to a "forty and over" pod and was told that he would be with a white inmate, but he was instead placed with a black inmate named Crutcher.  (*Id.*)  Crutcher allegedly was known to engage in violent behavior, such that Defendant D. Robertson had even warned Crutcher about his behavior on several occasions.  (*Id.*)  Despite those warnings, on April 27, 2013, Crutcher allegedly assaulted Storey by hitting him with a heavy object.  (*Id.* at 6.)  Defendant Coleman took Storey's statement about the incident.  (*Id.*)  Defendant Woods took pictures of Storey and told him the pictures would be turned in for the investigation.  (*Id.*)  Defendant Coleman then prepared an allegedly false disciplinary report stating that no weapon was used and no violence was committed.  (*Id.*)  After Defendant D. Robertson investigated the incident, she charged both Storey and Crutcher with fighting.  (*Id.*)  Storey was told by Defendant Futrell during the disciplinary hearing that she was finding him not guilty.  (*Id.* at 7.)  Storey believed that Defendant D. Robertson's faulty investigation was due to her intent to cover-up Crutcher's actions as well as an on-going conspiracy to cover-up the fact of persistent inmate assaults at HCCF.  (*Id.*)

In his third claim, Storey alleges there was a conspiracy against him to cover-up the assault by Crutcher, the filing of a false disciplinary report, and the altering and fabricating of the disciplinary report hearing summary.  (*Id.* at 9.)  Storey claims that Defendant Futrell altered the hearing summary, changing her mind and crossing off the not-guilty finding and replacing it with guilty.  (*Id.* at 8.)  The summary was signed by Defendant Williams.  (*Id.*)  Story asked Defendant Small to investigate the change in the report, but he stated that it was not his job.  (*Id.*)  Storey filed a grievance about this matter to which Defendant Futrell responded, four months later, that she did not change her mind about Storey's guilt and that the cross-out was merely a

mistake.  (*Id.*)  Defendant Dickerson filed a supervisor response stating that the matter was investigated by Defendant D. Robertson, who stated Storey was fighting.  (*Id.*)  Defendants Donahue and Woodall agreed with Defendant Dickerson's response to Storey's grievance.  (*Id.*)  Storey contends all the above referenced individuals are party to the conspiracy against him.  (*Id.*)

In his fourth claim, Storey claims that the Defendants deliberately delayed giving him his legal materials in retaliation for his filing of grievances against the prison staff.  (*Id.* at 10.)  Storey alleges that he spoke to Defendants Mills, Grier, Bradshaw, Small and Martin about getting his legal property transferred from the J Unit to the H Unit.  (*Id.*)  When the materials were not transferred, Storey filed a grievance to which Defendant Dickerson responded that there was a miscommunication about the return of his property.  (*Id.*)  Storey received his property two weeks after being released from segregation.  (*Id.*)  Storey claims these actions and inactions were in retaliation for the grievances he has filed.  (*Id.*)

Storey's fifth claim alleges there was a conspiracy to deprive him of his right to file a disciplinary appeal to challenge the allegedly false disciplinary reports.  (*Id.* at 12.)  Storey attempted to appeal Futrell's disciplinary hearing finding by sending his appeal paperwork through the mailroom, specifically asking Defendant Joy to make sure the paperwork was mailed.  (*Id.* at 11.)  When his paperwork was sent to the wrong place, Storey sent his appeal to the Deputy Commissioner with an inmate request asking for verification that the mail was delivered.  (*Id.*)  The inmate request was returned with "refused" written in the response.  (*Id.*)  Storey filed a grievance about the above situation to which Defendant Joy responded that they always answer requests in a timely manner.  (*Id.*)  Defendants Warden and Bradshaw agreed that the grievance was inappropriate, and Defendant Woodall agreed with Defendant Joy's response.

(*Id.*) Storey's appeal was returned for failure to include proper documentation. (*Id.* at 12.) Due to the timing of his receipt of the notice, Storey's opportunity to appeal lapsed. (*Id.*) Storey alleges that Defendants Donahue and Joy intentionally kept sending back his appeal paperwork in order to prevent him appealing the grievance concerning the cover-up of the false disciplinary reports. (*Id.*)

Storey's sixth claim alleges that on May 30, 2013, he asked to be removed from his cell due to threats from his cellmate. (*Id.* at 13.). Storey's cellmate allegedly threatened that if Storey did not move out of the cell, he would tell everyone that Storey was a snitch. (*Id.*) Storey asked Defendant Loveday to move him into protective custody. (*Id.*) At that time Storey's cellmate began yelling threats, allegedly within Defendant Loveday's hearing, but Defendants Loveday and King ignored those threats. (*Id.*) When Storey warned Defendant Loveday that he would hold her accountable if he was injured, Defendant Loveday falsely charged Storey with threatening her. (*Id.*) Storey was placed in protective custody that night and filed a grievance against Defendant Loveday. Defendant Loveday filed two disciplinary reports against Storey. (*Id.*) Storey's grievance was dismissed because Defendant Loveday no longer worked at HCCF. (I*d.*) Storey contends the response to his grievance by Defendant Estes, with which Defendants Donahue and Woodall agreed, did not adequately respond to his accusations against Defendant Loveday and King. (*Id.*) Further, the failure to take action to his grievance allegedly is a continuing example of the on-going official misconduct at the HCCF. (*Id.*)

Storey's seventh claim is that Defendant Joy and his staff formed a conspiracy with intent to retaliate against Storey. (*Id.* at 15.) The retaliation allegedly is demonstrated by Defendant Joy deliberately delaying sending out Storey's mail for four days (July 25, 2013 to July 29, 2013), which could have impacted the filing of his motions. (*Id.*) Storey filed a grievance

against Defendant Joy, to which Defendant Donahue responded that the mailroom should look into better procedures. (*Id.*) Storey contends that the issues with Defendant Joy and the mailroom staff is the "sole result of a lack of institutional control by prison superiors over prison staff and employees." (*Id.*)

In his eighth claim, Storey alleges that Defendant Vaughn filed a false disciplinary report against him for interfering with her duties. (*Id.* at 16.) Defendant Vaughn stated that Storey refused to let Defendant Grier strip search him, and she had to stop what she was doing to make him come out of his holding cell. (*Id.*) Storey believes Defendant Vaughn was ordered by her supervisor, Defendant Grier, to file the false report in retaliation for Storey having filed grievances against Grier. (*Id.*) The subsequent dismissal of his grievance by Defendant Small, to which Defendants Donahue and Woodall agreed, allegedly further shows the lack of institutional control over prison employees. (*Id.*)

In his ninth claim, Storey alleges that Defendant Golden falsely accused him of getting two food trays. (*Id.*) Storey filed a grievance, after which it was recommended that Defendant Golden be more careful when observing the food tray line. (*Id.*) Storey contends this is yet another example of lack of institutional controls over the conduct of prison personnel. (*Id.*)

In his tenth claim, Storey alleges a conspiracy to allow the filing of false disciplinary reports by Defendant Loveday, a conspiracy to cover-up the fact that Defendants Loveday and King failed to help him when he was threatened with harm by another inmate, a conspiracy to find him guilty of Defendant Loveday's disciplinary reports, and retaliation against him for filing grievances. (*Id.* at 18.) Storey alleges that he was found guilty of Defendant Loveday's disciplinary reports without having the opportunity to participate in the hearing. (*Id.* at 19.) Storey contends that he asked Defendants Futrell, Donahue, Cassiday and Mitchell to get him

information regarding Defendant Loveday's disciplinary filings, but they all failed to do so. (*Id.*) Storey filed a grievance regarding this matter and asked for a review of the surveillance video, but Defendant Howell, who was the grievance hearing officer, never reviewed the video. (*Id.*) In response to the grievance, Defendant Dickerson filed a response that Storey refused to participate in the hearing after several attempts to have him participate. (*Id.*) The summary reports, which Storey eventually received, both stated Storey refused to participate in the hearing, which Storey contends is untrue. (*Id.* at 18.) Storey asked Defendant Mitchell for a hearing with inmate advisor Zirkle regarding the reports because they were not true; however, Defendant Mitchell stated that since he had copies of the reports a hearing was unnecessary and no further discussion was needed. (*Id.*)

Storey's eleventh claim alleges that in order to get new clothes he had to file a grievance against Defendant Mills. (*Id.* at 17.) Storey states that despite his multiple requests for new clothes, his clothes were worn to the point of having holes in them and turning a brown color. (*Id.*) Storey contends that HCCF has a clothing exchange policy that is similar to other TDOC- -operated prisons, but HCCF staff does not follow the policy, making it unnecessarily difficult for prisoners to get new whites. (*Id.*) Storey contends this is another example of the lack of institutional controls at the prison. (*Id.*)

In his twelfth claim, Storey alleges, as he does in claim seven, that Defendant Joy continues to delay sending his mail and refuses to answer Storey's inmate request to provide the date mail is received and sent. (*Id.* at 20.) Storey contends that the delay by Defendant Joy is designed to allow the mailroom staff time to open and/or censor his outgoing mail. (*Id.*) In response to Storey's grievance from claim seven, Defendant Donahue responded that the mail should be stamped immediately upon its receipt and requested Defendant Bradshaw to monitor

the process; however, this response did not address his main issue – the failure by Defendant Joy and the mailroom staff to respond to his inmate request forms. (*Id*.) Storey alleges that the failure to address his inmate verification requests as well as the continued issues with Defendant Joy represent another example of lack of institutional control as well as a conspiracy by Defendant Joy and the mailroom staff to retaliate against Storey for the grievances he has filed. (*Id.*)

Storey's thirteenth claim asserts that on January 16, 2014, he was informed that he was having a hearing for his grievances against Defendant Joy. (*Id.* at 21.) Storey requested to go to his cell to get his documentation but was refused and told the hearing was going to start right away. (*Id.*) Though Storey presented the evidence he had available regarding the lack of response to his inmate request forms, the hearing committee, headed by Defendant Howell, stated the issue was regarding the delay in sending out mail. (*Id.*) Storey filed a grievance against Howell and the grievance committee for failing to address the correct issue; however, the grievance was returned because it was not received within the required time limit. (*Id.* at 22) Storey contends this continues to show the problems with prison controls as well as provides an example of false statements, in this case by Defendant Howell, made in response to grievances. (*Id.*)

In his fourteenth claim, Storey alleges that on January 3, 2014, another inmate threatened Storey at his cell door for the return of the hot pot he gave to Storey. (*Id.* at 23). Storey used the intercom in his cell to ask the booth officer how the other inmate got out of his cell, but was not given an answer. (*Id.*) Although the other inmate was eventually removed, Storey filed a grievance with internal affairs due to the inmate's being able to remain out of his cell and to threaten Storey. (*Id.*) The grievance was returned as inappropriate because Storey's requested

solution was a transfer to another prison.  (*Id.*)  Storey contends that this incident is another poor reflection on the prison staff and that it shows their lack of concern for that type of behavior between inmates.  (*Id*. at 24.)

Storey's fifteenth claim alleges that on February 25, 2014, Defendant McQueen refused to let him out of his cell to sign the sign-in sheet.  (*Id.* at 25.)  Defendant McQueen began yelling and cursing at Storey – refusing to let him out of his cell.  (*Id.*)  Storey requested to see the supervisor, but Defendant McQueen refused and then brought Storey grievance forms for him to fill out against her.  (*Id.*)  After Defendant Brown opened his cell door, Defendant McQueen left Storey's cell door open and taunted him, trying to get him to take action that would get him into trouble, but Storey stayed in his cell.  (*Id.*)  The next day Defendant McQueen filed a disciplinary report falsely accusing Storey of attempting to intimidate an employee.  (*Id.*)  In response, Storey filed a grievance against Defendants Brown and McQueen.  (*Id.*)  Although the grievance committee found McQueen was disrespectful it did not address any false accusations; thus, Storey contends this claim shows the continued unconstitutional practices of the prison and its staff.  (*Id.* at 26.)

In his sixteenth claim, Storey again claims the mailroom, specifically Defendant Joy, continues to delay sending his legal mail and does not respond to his inmate request forms.  (*Id.* at 27.)  Specifically, Storey mailed a letter to the Human Right's Defense Center, but he has not received a response from the mailroom verifying the letter was sent.  (*Id.*)  Storey has no way to know whether his letter was received.  (*Id.*)  Storey filed another grievance against Defendant Joy, but was told that he would need to get a court order before the mailroom would respond to his inmate request.  (*Id.*)  Storey contends this is further official misconduct and gross negligence by the Defendants.  (*Id.*)

Storey's seventeenth claim alleges that on March 3, 2014, he placed a note for legal mail to be retrieved from his cell; however Defendants Grier and Golden, who picked up legal mail that day, did not get Storey's legal mail. (*Id.* at 28.) The next day Defendant Joy got Storey's legal mail but, again, did not respond to the inmate request form for verification attached to the mail. (*Id.*) Storey filed another grievance asking the mailroom to respond to his inmate requests for verification, but it was returned because he had already filed a grievance in the matter. (*Id.*)

In his eighteenth claim, Storey alleges that on February 14, 2014, Defendant Mills informed Storey that she was in possession of a box of his legal papers, which she agreed to send to him. (*Id.*) Storey got the legal papers a week later and sent Defendant Mills an inmate request asking how she had his papers. (*Id.*) When she did not respond, Storey filed a grievance against her for unlawful possession of his legal papers. (*Id.*) Although Defendant Mills responded that the property was in the H-Unit hallway, she did not respond to the inmate request. (*Id.*) Storey contends that he has always objected to having his legal property in possession of prison officials and that this is yet a further example of gross negligence, abuse of authority and retaliation against him. (*Id.* at 29.)

Storey's nineteenth claim alleges Defendant Schofield, along with his subordinates, are personally involved or have "given a tacit approval" for the unconstitutional actions of the prison employees including concealing unconstitutional actions against him and impeding his access to the courts. (*Id.* at 30.) Storey's twentieth claim makes the same allegations against Defendant Spencer, the Hardeman County Commissioners, and CCA executives Defendants Henniger, Turner and Puryear along with their subordinates. (*Id.*)

In his twenty-first claim, Storey alleges that all named and unnamed Defendants were co-conspirators acting to deprive Storey and other prisoners of their constitutional and statutory rights. (*Id.* at 30-31.)

In his twenty-second claim, Storey alleges a failure to supervise, train, and investigate misconduct by Defendants Schofield, Spencer, Henniger, Turner and Puryear for the unconstitutional acts of their subordinates. (*Id.* at 31.)

In his twenty-third claim, Storey alleges that his allegations show an unwritten policy of deliberate indifference against him and the other prisoners on the part of Defendants Schofield, Spencer, the Hardeman County Commissioners and Henniger.

In his twenty-fourth claim, Story alleges that the aforementioned actions constituted a conspiracy with the intent to fraudulently conceal and cover-up their actions. (*Id.*)

## II.  Analysis

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rules of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations

in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*,

891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Storey filed his thirty-six page typed, twenty-four count complaint under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The complaint contains no factual allegations against Defendants Gates or Ricketts. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). Storey's claims against TDOC employees Schofield, Woodall, Westbrook, Mitchell, Smith, Williams and Loshbough in their official capacities are brought against the State of Tennessee.

Plaintiff has no valid claim against the TDOC Defendants in their official capacities. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity

at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code. Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

Storey's official capacity claims against CCA officers and employees Henniger, Turner, Puryear, Donahue, Dickerson, Bradshaw, Gates, Cassidy, Smalls, Mills, D. Robertson, Estes, Woods, Grier, Martin, Joy, Coleman, King, Futrell, Howell, G. Robertson, Ricketts, Loveday, Vaughn, Golden, McQueen, and Brown are properly construed as claims against CCA. However, the complaint does not allege a viable claim against CCA or the CCA Defendants in their official capacities. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). CCA "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against CCA, Storey "must show

that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.*

The complaint does not adequately allege that Storey suffered an injury because of an unconstitutional policy of custom of CCA. In Storey's twenty-third claim he alleges that the Defendants' acts "constituted a [sic] unwritten policy of deliberate indifference. . . ." (ECF No.1 at 31.) Such a conclusory allegation is insufficient to establish that CCA had an unconstitutional policy, that the policy was applied to Storey, and that the policy was a "moving force" behind the "unconstitutional and unlawful acts."

Storey's claims against Defendant Spencer in his official capacity are properly brought against Hardeman County, which also is a named party. A local government "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish

the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Co. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g., Fowler v. Campbell*, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); *Yeackering v. Ankrom*, No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); *Oliver v. City of Memphis*, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); *cf. Raub v. Correctional Med. Servs., Inc.*, No. 06- 13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); *Cleary v. County of Macomb*, No. 06- 15505, 2007 WL 2669102, at *20 (E.D. Mich. Sept. 6, 2007) (same); *Morningstar v. City of Detroit*, No. 06-11073, 2007 WL 2669156, at *8 (E.D. Mich. Sept. 6, 2007) (same); *Chidester v. City of Memphis*, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). The conclusory allegations in Storey's twenty-third claim that the alleged acts by defendants "constituted a[sic] unwritten policy of deliberate indifference ," (ECF No.1 at 31) are insufficient to establish a purported official policy or custom of Hardeman County which caused injury to Storey.

Although Storey purports to bring this action on behalf of himself and "all other prisoners who are similarly situated" (*id.* at 3), he lacks standing to sue for deprivations of the rights of his fellow inmates. "To state a case or controversy under Article III [of the United States Constitution], a plaintiff must establish standing." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011).

> [T]he irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks, footnote and citations omitted); *see also Lance v. Coffman*, 549 U.S. 437, 439 (2007) (same). "In requiring a particular injury, the Court meant that the injury must affect the plaintiff in a personal and individual way." *Winn*, 563 U.S. at 134 (internal quotation marks and citation omitted). Unless plaintiff suffered an actual injury, he "was not the aggrieved party, [and] he lacks standing" to sue. *Percival v. McGinnis*, 24 F. App'x 243, 246 (6th Cir. 2001); *see also Corn v. Sparkman*, No. 95-5494, 1996 WL 185753, at *1 (6th Cir. Apr. 17, 1996) ("A prisoner cannot bring claims on behalf of other prisoners. A prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights." (citation omitted)). Therefore, Storey's allegations will only be reviewed based only on the individual injuries he claims, not with regard to any purported injuries to "similarly situated" prisoners.[5]

The bulk of Storey's claims involve allegations complaining about the grievance procedure at HCCF (claims 1, 3, 5, 6, 8-9, 12-13, & 15-17.) Inmates do not have a right under

---

[5] The Court previously denied Storey's motion to certify this case as a class action. (ECF No. 8.)

the Due Process Clause to an effective grievance mechanism. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Smith v.Corr. Corp. of Am.*, 19 F. App'x 318, 321 (6th Cir. 2001) (holding that prisoner "had no constitutional right to . . . disciplinary or grievance systems that met his standards"); *Irvin v. Fluery*, No. 2:07-cv-117, 2007 WL 5328577, at *2 (W.D. Mich. Sept. 11, 2007) ("[T]he Sixth Circuit and other circuit courts have held that there is no constitutional right to access an institutional grievance procedure.") (report and recommendation), *adopted*, 2007 WL 3036493 (W.D. Mich. Oct. 16, 2007); *Mackey v. Carberry*, No. 2:07-cv-43, 2007 WL 2479296, at *3 (W.D. Mich. Aug. 28, 2007) (report and recommendation adopted as opinion of the Court); *Holloway v. Drew*, No. 2:07-CV-160-MEF, 2007 WL 1175067, at *2 (M.D. Ala. Apr. 4, 2007) (report and recommendation); *Robertson v. Montgomery Cnty.*, No. 3 06 0435, 2006 WL 1207646, at *2 (M.D. Tenn. Apr. 27, 2006) ("[S]tate law does not create a liberty interest in the grievance procedure."); *Robinson v. Hastings*, 2006 WL 950185, at *4.[6]

Storey further contends that the denial of his grievances by supervisors and other high-level actors within the prison system reflects a failure to act or properly investigate which rises to the level of a § 1983 claim (claims 1, 2, 3, 4, 6, 8, 10, 13, 22). However, the participation of Defendants Cassiday, Dickerson, Donahue, Estes, Futrell, Henniger, Howell, Mitchell, Robertson, Robinson, Schofield, Small, Smith, Spencer, Turner, Williams, Woodall and Woods in processing or denying Storey's grievances cannot in itself constitute sufficient personal involvement to state a claim of constitutional dimension. *Simpson v. Overton*, 79 F. App'x. 117, 2003 WL 22435653 (6th Cir. 2003); *see also Martin v. Harvey*, 14 F. App'x. 307, 2001 WL

---

[6]*See also* 42 U.S.C. § 1997e(b) ("The failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title.").

669983, at *2 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Section 1983 liability may not be imposed against a defendant for "a mere failure to act" based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d at 300; *Lillard*, 76 F.3d at 727-28.

Similarly, Storey also has no cause of action against these Defendants for failing to investigate or take remedial measures to the extent they were aware of his grievances and complaints. Although failure to investigate may give rise to § 1983 supervisory liability, *see Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir. 1990) and *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985), the reasoning in *Walker* and the analysis in its progeny teach that evidence of a failure to investigate can establish municipal liability only. In *Dyer v. Casey*, No. 94-5780, 1995 WL 712765, at *2 (6th Cir. Dec. 4, 1995), the Court stated that "the theory underlying [*Marchese*] is that the municipality's failure to investigate or discipline amounts to a 'ratification' of the officer's conduct."

In *Walker*, the Sixth Circuit distinguished *Marchese* because the Court "imposed the broad investigative responsibilities outlined in Marchese upon the Sheriff in his official capacity." *Walker*, 917 F.2d at 1457 ("The Sheriff is sued here in his official capacity and in that capacity, he had a duty to both know and act."). In 1998, the Sixth Circuit affirmed the dismissal of a claim of supervisory liability based on the "failure to investigate," stating:

> Young's claim against defendants McAninch and Goff is based solely on their alleged failure to investigate defendant Ward's behavior towards Young. Although Young stated that defendants McAninch and Goff had knowledge of his allegations against defendant Ward, this is insufficient to meet the standard that they either condoned, encouraged or knowingly acquiesced in the misconduct.

*Young v. Ward*, No. 97-3043, 1998 WL 384564, at *1 (6th Cir. June 18, 1998).

In additional to claims against the grievance process itself, Storey has claimed that Defendants Coleman, Golden, Howell, Loshbough, Loveday, McQueen, D. Robertson and Vaughn put false statements in their disciplinary reports (claims 1, 2, 6, 8, 9, 13, & 15). There ordinarily is no right of action against a witness who testifies falsely at trial. In *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983), the Supreme Court held that police officers are absolutely immune from suits for money damages for alleged perjury during criminal trials. In so holding, the Supreme Court stated that private parties who testify in court traditionally have been immune from damages under § 1983. *See id.* at 330-34. Although a prison disciplinary proceeding is not precisely equivalent to a criminal trial, several courts have applied *Briscoe* to bar suits against prison employees who testify falsely at disciplinary hearings. *See, e.g.*, *Thomas v. Calero*, 824 F. Supp. 2d 488, 499 (S.D.N.Y. 2011) (report and recommendation adopted by district court); *McCullon v. Brouse*, Civ. No. 3:10-CV-1541, 2011 WL 1398481, at *8 (M.D. Pa. Mar. 24, 2011) (report and recommendation), *adopted*, 2011 WL 1419650 (M.D. Pa. Apr. 13, 2011); *Crumbley v. Dawson*, No. 9:09cv14, 2010 WL 2209189, at *5 (E.D. Tex. May 28, 2010); *Gibson v. Roush*, 587 F. Supp. 504, 506 (W.D. Mich. 1984).[7] Other courts have held that, where a prisoner has received the process that is due, he has no due process claim arising from even false testimony at a disciplinary hearing. *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005) ("The issuance of false misbehavior reports and provision of false testimony against an inmate by corrections officers is insufficient on its own to establish a denial of due process. Rather, such action violates due process only where either procedural protections were denied that would have

---

[7] In *Cleavinger v. Saxner*, 474 U.S. 193 (1985), the Supreme Court held that disciplinary committee members were entitled to qualified, rather than absolute, immunity. That decision stressed that hearing officers are not independent and are not akin to professional hearing officers. They are, instead, prison officials and fellow employees of the individuals lodging charges against the inmate. *Id.* at 203-04. That decision did not address the immunity of witnesses at disciplinary hearings.

allowed the inmate to expose the falsity of the evidence against him, or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights ...." (citations omitted)); *see also Crumbley*, 2010 WL 2209189, at *5 ("[T]he prisoner has a right to due process in the proceeding, which process can be provided only by the hearing officer, not by a witness, whether favorable or unfavorable.")

Storey's second and third claims are predicated upon the alleged assault against Story by a fellow inmate and the failure of Defendants to adequately investigate said assault. The failure of the Defendants Futrell, Coleman, Woods, D. Robertson, Williams, and Small to investigate the alleged assault and then penalize the wrongdoers does not violate Storey's rights. The Constitution does not compel government officials to investigate complaints by citizens. *See, e.g.*, *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."); *Mitchell v. McNeil*, 487 F.3d 374 (6th Cir. 2007) (dismissing due process claim based on failure to investigate); *Smith v. Jackson*, No. 93-3052, 1993 WL 241816 (6th Cir. July 2, 1993) (affirming dismissal of claim that police and social worker failed to investigate alleged sexual abuse of child); *Parkhurst v. Tabor*, Civ. No. 07-2068, 2007 WL 3227205 (W.D. Ark. Oct. 30, 2007); *Langworthy v. Dean*, 37 F. Supp. 2d 417, 422-23 (D. Md. 1999) (holding that "there is not a clearly established constitutional right to have claims of criminal activity by a private actor investigated"; collecting cases); *Joy v. City of Dayton*, No. C-3-90-132, 1991 WL 1092505, at *8 (S.D. Ohio June 28, 1991) ("One does not have a constitutional right to have a police investigation conducted in a particular manner, or to have one conducted at all."); *Doe v. Mayor*

& *City Council of Pokomoke City*, 745 F. Supp. 1137, 1139 (D. Md. 1990); *Crawford v. Lane*, No. 85 C 10510, 1988 WL 23799, at *1 (N.D. Ill. Mar. 9, 1988) ("Inadequate investigation of an incident by government officials does not give rise to a cause of action for denial of civil rights."); *Sellner v. Panagoulis*, 565 F. Supp. 238, 252 (D. Md. 1982), *aff'd mem.*, 796 F.2d 474 (4th Cir. 1986).[8]  Moreover, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973).

Storey included in numerous claims of First Amendment retaliation by defendants for grievances filed.  This includes claims against Defendant Mills, Grier, Bradshaw, Small, Martin, Joy, Grier, Loveday, Futrell, Mitchell as well as a general claim against all defendants (claims 4, 7, 10, 12, 18, 21.)

"Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).

> A retaliation claim essentially entails three elements:  (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *see also Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (same); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) (same). "If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct." *Smith*, 250 F.3d at 1037.

---

[8] *See also George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.  A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

As previous stated, inmates do not have a right under the Due Process Clause to an effective grievance mechanism. Furthermore, the many ongoing grievances filed by Storey indicate that the Defendants' conduct did not actually deter the exercise of Storey's First Amendment rights.

Storey alleges in multiple claims that the Defendants' actions were part of a general conspiracy against him (claims 2, 3, 5, 10, 21 & 24). However, these claims do not adequately allege a civil conspiracy. As the Sixth Circuit Court of Appeals has explained:

> In *Spadafore v. Gardner*, 330 F.3d 849 (6th Cir. 2003), we stated the standard governing a § 1983 conspiracy claim:
>
>> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.
>
> 330 F.3d at 854 (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). Although circumstantial evidence may prove a conspiracy, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.* (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)); *accord Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). That pleading standard is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

*Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011). An assertion, unaccompanied by supporting facts, that parties conspired with each other is a legal conclusion that a court need not accept as true. *Id.* at 563-64 (collecting cases). Allegations of "a plan or agreement to violate [the plaintiff's] constitutional rights" is required. *Id.* at 564. Storey's allegations that Defendants conspired with each other is entirely devoid of supporting facts.

Storey repeatedly asserted that Defendant Joy and his staff refused to respond to his inmate verification requests and delayed sending his mail, which impeded his ability to file motions and have contact with external parties (claims 7, 12, 16 & 17). However, the complaint does not assert a valid claim for denial of Storey's First Amendment right of access to the courts. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts."). The Supreme Court has held that

> "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. However, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996); *see also Thaddeus-X*, 175 F.3d at 391 (inmates' First Amendment right of access to the courts "extends to direct appeal, habeas corpus applications, and civil rights claims only").

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see also Hadix*, 182 F.3d at 405-06 (explaining how *Lewis* altered the "actual injury" requirement previously articulated by the Sixth Circuit). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.

1996).  The complaint does not allege that Storey suffered any actual injury due to lack of response to the inmate verification request.

Storey's fourth and eighteenth claims implicate Defendants Mills, Grier, Bradshaw, Smalls, Martin and Dickerson, alleging that Storey's personal property was withheld for an extended period of time.  (ECF No. 1 at 10, 28.)  Claims for deprivation of property are not actionable under § 1983 if adequate state remedies are available to redress the deprivation.  *See, e.g.*, *Parratt v. Taylor*, 451 U.S. 527 (1981), *partially overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517 (1984); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).  "[T]he State of Tennessee does provide an adequate post-deprivation remedy for takings of property." *McMillan v. Fielding,* 136 F. App'x 818, 820 (6th Cir. 2005); *see also Brooks v. Dutton,* 751 F.2d 197, 199 (6th Cir. 1985).  Plaintiff is entitled to file a claim with the Tennessee Claims Commission or to sue the Defendants, or any other responsible person, in state court.

Section 1983 will not support a claim based upon a theory of *respondeat superior* alone. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). A plaintiff must allege that a defendant official was personally involved in the unconstitutional activity of a subordinate in order to state a claim against such a defendant. *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982). A failure to supervise, control or train an individual is not actionable "unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "At a minimum a plaintiff must show that the official least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson Co., Ky*, 668 F.2d 869, 874 (6th Cir. 1982).

Storey's nineteenth, twentieth, and twenty-first claims implicate Defendants on the basis of failure to supervise, control or train. It is clear that Storey sues Defendants Schofield, Woodall, Westbrook, Spencer, Henniger, Turner, and Puryear merely because of their supervisory or management positions.

Storey's complaint addresses multiple issues regarding various prison conditions, including proximity with dangerous inmates and failure to be provided with new clothing (claims 2, 6, 11 & 14). For a convicted prisoner, such claims arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991).

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (internal quotation marks omitted). *See also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) ("To succeed in an Eighth Amendment challenge, [a prisoner] must establish that . . . a single, identifiable necessity of civilized human existence is being denied . . . ."). The Constitution "does not mandate comfortable prisons." *Wilson*, 501 U.S. at 298 (internal quotation marks and citation omitted). "[R]outine discomfort is part of the penalty that criminal

offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (internal quotation marks and citation omitted). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* at 9.

In considering the types of conditions that constitute a substantial risk of serious harm, the Court evaluates not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, *i.e.*, that society does not choose to tolerate the risk in its prisons. *Helling v. McKinney*, 509 U.S. 25, 36 (1993). The Supreme Court has also emphasized that prisoners can rarely establish an Eighth Amendment violation from a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation:

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing as amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

*Wilson*, 501 U.S. at 304-05 (citation omitted); *see also Thompson*, 29 F.3d at 242 ("Eighth Amendment claims may not be based on the totality of the circumstances, but rather must identify a specific condition that violates" a particular right); *Carver v. Knox Cnty., Tenn.*, 887 F.2d 1287, 1294 (6th Cir. 1989) (same).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a

substantial risk that the prisoner would suffer serious harm.  *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling*, 509 U.S. at 32; *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995).  "[D]eliberate indifference describes a state of mind more blameworthy than negligence."  *Farmer*, 511 U.S. at 835.  Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.*  This approach comports best with the text of the Eighth Amendment as our cases have interpreted it.  The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."  An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation.  The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . .  But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38, 114 S. Ct. at 1979 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment.").  The subjective component must be evaluated for each defendant individually.  *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011); *see also id.* at 768 ("[W]e must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge.").

In his second claim, Storey alleges that he was put into a cell with a dangerous inmate. (ECF No. 1 at 5.)  The complaint states the Defendant Robertson was moving him into the 40 and over pod with a white inmate, but he ended up with a black inmate, Crutcher, who later

assaulted him.  (*Id.*)  The complaint does not allege that any Defendant knew specifically Crutcher would harm Storey, but merely asserts that other inmates told Storey that Defendant D. Robertson was aware that Crutcher had violent tendencies.  (*Id.*)  These facts are insufficient to support an Eighth Amendment violation.

Similarly in his sixth and fourteen claims, Storey alleges that another inmate was threatening him.  (*Id.* at 13 & 23.)  However, Storey does not allege that he suffered any actual harm as a result of this incident, only that prison policy was not followed in response to the threats.

In his eleventh claim, Storey contends that HCCF did not adequately implement the clothes exchange program so that he had to wear clothes that had become worn and discolored. (*Id.*)  While Storey does assert that he informed Defendants Marshal, D. Robertson, Mills and Dickerson about his request, he does not allege that they replied with indifference but rather with a request for patience.  Furthermore, Storey does not allege that he suffered any actual harm from having to wear old and worn clothes – just that the prison is not adequately enforcing the clothes exchange policy.  These allegations are not sufficient to support an Eighth Amendment violation.

### III.  Standard for Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA.  *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured.  *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of

course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, because the deficiencies in Storey's complaint cannot be cured, leave to amend is not warranted.

## IV. Appeal Issues

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Storey in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

## V. Conclusion

The Court DISMISSES Storey's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b(1). Leave to amend is

DENIED because the deficiencies in Storey's complaint cannot be cured. It is also CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Storey would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Storey nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, Storey is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

Finally, for analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Storey, this is the third dismissal of one of his cases as frivolous or for failure to state a claim.[9] Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Consequently, Storey is warned that he is barred from filing any further actions *in forma pauperis* while he is a prisoner within the meaning of 28 U.S.C. § 1915(h)

---

[9] Plaintiff previously filed *Storey v. Poss*, No. 3:97-cv-0804 (E.D. Tenn. October 30, 1997) (dismissed for failure to state a claim) and *Storey v. State of Tennessee*, No. 3:97-cv-0307 (E.D. Tenn. April 24, 1997) (dismissed for failure to state a claim).

unless he is in imminent danger of serious physical injury.  Any civil action filed by Storey after the date of the judgment in this case, while he is a prisoner, must be accompanied by either the $400 civil filing fee or allegations sufficient to show that, at the time of filing the action, he is in imminent danger of serious physical injury.  If Storey submits any complaint that does not allege he is under imminent danger of serious physical injury or is not accompanied by the filing fee, the complaint will be filed, but Storey will be required to remit the full filing fee.  If he fails to do so, the case will be dismissed, and the filing fee will be assessed from his inmate trust account without regard to the installment payment procedures of 28 U.S.C. §§ 1915(a)-(b).[10]

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[10] Plaintiff is further cautioned that, if he attempts to evade the § 1915(g) restriction by filing actions in other jurisdictions that are then transferred or removed to this district, the Court may impose a monetary sanction in the full amount of the civil filing fee.